CRAIG M. PETERS, NO. 184018
**ALTAIR LAW LLP**
465 California Street, 5th Floor
San Francisco, CA 94104
Phone: (415) 988-9828
Email: cpeters@altairlaw.com; tguedikian@altairlaw.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION

|  |  |
|---|---|
| JANE DOE, Individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CLOUDFLARE, INC., JOHN DOE CORPORATE ENTITIES 1–500, JOHN DOE INVESTORS 1–5,000, and JOHN DOE EMPLOYEES 1–100,000,<br><br>　　　　　Defendants. | CASE NO. 3:25-cv-10300<br><br>**COMPLAINT FOR DAMAGES**<br>**CLASS ACTION**<br>**DEMAND FOR JURY TRIAL**<br><br>**1.  15 U.S.C. § 6851 (*multiple violations*)** |

Jane Doe, Individually and on behalf of all others similarly situated, v. Cloudflare, Inc., *et al*,
Case No. _____
CLASS ACTION COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

## INTRODUCTION

1.    The right to control the bounds of the disclosure of one's own intimate visual depiction is a well-established intellectual property right.  Yet this right is recklessly violated by Meta Platforms, Inc. (formerly Facebook, Inc.) through the nonconsensual disclosure of identifiable individuals' intimate images (hereinafter "NCII"), including intimate images of minors and child sexual exploitation images.  Defendant Cloudflare, Inc., provides a range of internet services, including content delivery network (CDN) services, DDoS protection services, data privacy and security (DNS) services, and security solutions for Facebook.  Through these services, Cloudflare assists Facebook with, and facilitates, the disclosure of NCII.  Cloudflare also provides services for other sites that disclose NCII, including X (formerly Twitter).

2.    15 U.S.C. § 6851 (hereinafter the "NCII Statute") was enacted by Congress to provide victims of NCII (which includes minors because a minor cannot consent to the creation or disclosure of an intimate image of themselves) a civil remedy for the non-consensual disclosure of an individual's intimate image(s). This is a claim being brought pursuant to the NCII Statute, and it seeks to address, correct, and hold Cloudflare, Inc., accountable for its role in assisting, facilitating and participating in the nonconsensual disclosure of these images on Facebook, and do justice for the untold numbers of victims of this extremely reckless behavior that causes immense irreparable harm.

## JURISDICTION

3.    This is an action brought pursuant to 15 U.S.C. § 6851 ("NCII Statute") for liquidated damages based on the nonconsensual disclosure of Plaintiff's intimate images ("NCII") by Defendant.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question arising under 15 U.S.C. § 6851 and also 28 U.S.C. § 1332 because this action involves citizens of different States and the matter in controversy exceeds $75,000, exclusive of interests and costs.

**PARTIES AND VENUE**

4.      Jane Doe[1] is a resident of North Carolina.

5.      Defendant Cloudflare, Inc., (hereinafter Cloudflare or Defendant) was incorporated in Delaware in 2009.  Upon incorporation, its principal business address was in Palo Alto, California.  By at least 2020, Cloudflare's principal place of business was in San Francisco, California, where it remains.   During all relevant times to this action, Defendant has been registered to do business in California, has maintained its principal business address in California, and has registered agent(s) in California.  During all times relevant to this action, Defendant's principal business address has been within the jurisdiction of this District.    Defendant engages in continuous and systematic activity in California, including in this District, and did so during all times relevant to this action.

6.      Defendant John Doe Corporate Entities 1–500, are entities who, like Cloudflare, provide essential services that support Facebook and other websites that disclose NCII, and as such are part of the NCII disclosure chain.  The actions of these entities contribute materially to the disclosure of NCII.  This group also includes entities who, like Facebook, are websites that permit intimate images to be posted to their site and the disclose NCII.  The true names and capacities of these entities are presently unknown.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

7.      Defendant John Doe Investors 1–5,000 are the individuals and/or entities that invested in Facebook, and other websites, that disclose NCII.  Facebook maintains Transparency Reports which provide bi-annual, or yearly, reports on actions it takes to remove content, including

---

[1] Pursuant to 15 U.S.C. § 6851(a)(3)(B), Plaintiff has filed this action using a pseudonym to protect her identity and is requesting the Court grant the equitable relief.

Jane Doe, Individually and on behalf of all others similarly situated, v. Cloudflare, Inc., *et al*,
Case No. _____
CLASS ACTION COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

NCII of adults and CSAM of minors.  The fact that Facebook discloses NCII of adults and CSAM of children is publicly well-known, yet these investors invest capital knowing that Facebook discloses this type of content.  John Doe Investors' capital assists in making NCII accessible.  The true names and capacities of these individuals and/or entities are presently unknown.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8.      Defendant John Doe Employees 1–100,000 are the current and/or former executives, officers, managers, and engineers who participated in, directed, and/or authorized decisions that facilitate the disclosure of NCII, and/or have knowledge that NCII is being disclosed on Facebook and other websites.  The true names and capacities of these individuals are presently unknown.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

9.       Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).

## DIVISIONAL ASSIGNMENT

10.      Defendant Cloudflare's principal place of business is in San Francisco County, which falls under the San Francisco/Oakland Division of this District.  Civil L.R. 3.2(d).  As such, this matter should be assigned to the San Francisco Division of the Court.

## RELEVANT LAW

11.      This claim is being brought pursuant to 15 U.S.C. § 6851, the NCII Statute, which provides for a civil cause of action for the nonconsensual disclosure of an individual's private intimate images, or NCII.

12.      The NCII Statute cause of action is for:

> An individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows

that, or recklessly disregards whether, the individual has not consented to such disclosure

13.     The NCII Statute defines "disclosure" as to transfer, publish, distribute, or make accessible, and the use of the word "disclosure," "disclose," "disclosed," or "disclosing" in this complaint has the meaning imparted upon it by the statute.

## GENERAL FACTUAL ALLEGATIONS

14.     Defendant Cloudflare, Inc., provides services for websites and internet service providers, including services aimed at making the websites that utilize their services safer, faster, more secure, and more reliable.

15.     Cloudflare is a large-scale network having security services to protect organizations like Facebook, and many other internet websites, along with their data and users.  This allows users to connect to Cloudflare first and then to the original server.

16.     Defendant assists websites through a variety of critical functions, including serving CDN, DDoS mitigation, and DNS services.

17.     A content delivery network (CDN) is a geographic group of servers that caches content close to end users, which improves website performance.  Distributed denial of service (DDoS) mitigation helps protect against cyberattacks that flood websites with illegitimate traffic in an attempt to disrupt the websites services. Cloudflare does this by differentiating between legitimate traffic and attack traffic.  The domain name system (DNS) is the "phonebook of the internet," and is responsible for finding the correct IP addresses when users want to connect with a specific website.

18.     In short, Defendant powers internet requests for millions of websites, and is an integral part of facilitating and assisting a website's performance.  Without the Defendant, and/or

the other Doe Corporate Defendants, a website who utilizes their services might not function as it is intended to.

19.    Defendant performs services for Facebook, including but not limited to CDN, DDoS mitigation, and DNS services.

20.    For example, upon information and belief, when a Meta server goes down, Cloudflare DNS services (and other DNS service providers) will point traffic to a functioning Meta Server – thereby making the content of the sever, which includes NCII, accessible to the public.

21.    Defendant also provides similar services for many other websites, including, for example X (formerly Twitter).

22.    Facebook is a social networking site where users can post text, images, videos, and share direct messages.

23.    In conjunction with the services provided by the Defendant, these posts or messages on Facebook are then disclosed, as defined by the NCII Statute, to the public and users of the platform.

24.    In October 2021, Facebook was rebranded as Meta, which brought together multiple apps and technologies under one new company brand.

25.    Since it was established in the early 2000s, Facebook has risen in popularity, and by 2022, Facebook had over two (2) billion daily active users ("DAUs") and monetizable daily active users ("mDAUs") globally.

26.    A DAU is the count of users who perform a certain action on a platform every single day; an mDAU is a DAU who also makes a purchase or transaction within a specific time frame, and a MAU is a monthly active user.

27.    As of the second quarter of 2022, Facebook had 1.91 billion mDAUs globally.

28.    On October 1, 2022, a federal civil cause of action relating to the nonconsensual disclosure of an individual's intimate image was created under 15 U.S.C. § 6851(the NCII Statute).

29.    The statute prohibited the disclosure of an individual's intimate images without the depicted individual's consent, or with a reckless disregard as to whether the depicted individual did not consent. The statute defines an intimate image as a visual depiction of the uncovered genitals, pubic area, anus, or post-pubescent female nipple, the display or transfer of bodily sexual fluids onto any part of the body or from the body of the depicted individual, or the depicted individual engaging in actual or simulated sexually explicit conduct.[2]

30.    Meta claims to restrict the display of adult nudity and sexual activity on Facebook.

31.    Despite these "claims," adult nudity and sexual activity is posted to and disclosed by Facebook.

32.    These disclosures on Facebook are pushed, and also disseminated, through (or via) CDNs, including by Defendant Cloudflare.

33.    In 2022, Facebook acted on 127.9 million pieces of adult nudity/sexual activity; in 2023, it acted on 169 million pieces of adult nudity/sexual activity; in 2024, it acted on 168.7 million pieces of adult nudity/sexual activity; and over the first half of 2025, it acted on 92.7 million pieces of adult nudity/sexual activity.

34.    Meta claims that it does not allow child nudity or child sexual exploitation content on Facebook.

---

[2] "Sexually explicit conduct" is a defined term in the NCII Statute and is as defined in 18 U.S.C. § 2256(2)(A) & (B). 15 U.S.C. § 6851(a)(6). Therefore, under the NCII Statute, "sexually explicit conduct" means actual or simulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex), bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the anus, genitals, or pubic area of any person.

35.     Despite these "claims," child nudity and child sexual exploitation content is posted to and disclosed by Facebook.

36.     In 2022, Facebook acted on 8.8 million pieces of child nudity and physical abuse and 92.2 million pieces of child sexual exploitation content; in 2023, it acted on 7.3 million pieces of child nudity and physical abuse and 49.2 million pieces of child sexual exploitation content; in 2024, it acted on nearly 5.6 million pieces of child nudity and physical abuse and 37.4 million pieces of child sexual exploitation content; and over the first half of 2025, it acted on 4 million pieces of child nudity and physical abuse and 9.6 million pieces of child sexual exploitation content.

37.     Cloudflare makes known that it has and will terminate services to domains who fail to take action to remove verified CSAM or are dedicated to the dissemination of CSAM. However, despite these claims, Defendant Cloudflare has continued to work with Meta/Facebook.

38.     In reporting these numbers, Meta explains that the volume of content it acts on regarding Facebook is only part of the story because it does not reflect how long it took to detect the violation or how many times users saw that violation while it was on Facebook.  Facebook users might have seen the content a few times, a few hundred times, or in excess of a thousand times before action is taken.

39.     Facebook has long known that people use Facebook for "revenge porn."  In an article entitled 'Detecting Non-Consensual Intimate Images and Supporting Victims,' it states that 'when someone's intimate images are shared without their permission it can be devastating.  To protect victims, its long been our policy to remove non-consensual intimate images (sometimes referred to as revenge porn).'

40.    Despite the NCII Statute, Meta does not have a system in place to verify the age, and if an adult, the consent of an individual depicted in adult nudity or adult sexual activity content on Facebook, or to even prevent these images from being posted and then disclosed in the first place.

41.    In disclosing intimate visual depictions and/or sexually explicit images on Facebook, Defendant recklessly disregards whether the depicted individual has not consented to such disclosure.

42.    When it comes to reports of abuse on websites that use its services, like Facebook, Defendant receives those reports and makes itself aware of said reports.

43.    Though Cloudflare itself does not have the ability to remove content on websites hosted by others, it does forward requests for removal of content to the website hosting provider.

44.    Like Facebook, Cloudflare produces its own Transparency Report.  However, despite being aware of Facebook's Transparency Report and acknowledging their own Transparency Report and their goals, Cloudflare continued to work with Meta.

45.    Despite the NCII Statute, Cloudflare does not have a system in place to verify the age, and if an adult, the consent of an individual depicted in adult nudity or adult sexual activity content on Facebook, or to even prevent these images from being posted disclosed in the first place.

46.    Jane Doe created several "intimate visual depictions," and/or images of "sexually explicit conduct" as defined in the NCII Statute, depicting herself, solely for her then fiancé.

47.    These intimate visual depictions are Jane Doe's intellectual property.

46.     As she created these images herself, Jane Doe consented to the creation of the intimate visual depictions but did not consent to further disclosure of these images other than to her then fiancé.

49.     During their separation, Jane Doe's ex-fiancé engaged in a malicious campaign to publicly humiliate and harm her.

50.     Plaintiff's ex-fiancé created several fake Facebook profiles using variations of Plaintiff's name and likeness.

51.     These fake Facebook profiles were used to send friend requests to acquaintances and strangers alike.

52.     These Facebook pages included Jane Doe's intimate images, which were posted without her consent.

53.     Facebook disclosed Plaintiff's NCII when visitors to these fake Facebook accounts viewed her NCII.

54.     Defendant participated, and played an integral role, in the disclosure of Plaintiff's NCII based upon the services that it provides to Facebook.

55.     In addition to posting these images on the fake Facebook profiles, Jane Doe's ex-fiancé also sent direct messages through Messenger to individuals containing the same intimate visual depictions.

56.     There were several intimate visual depictions shared, including but not limited to:

- 7/25/22 – 6:02 UTC - Unknown 1 sends video to Unknown 2
     7/25/22 - 6:04 UTC - Unknown 1 sends 2nd video to Unknown 2
- 7/25/22 – 6:14 UTC – Unknown 2 sends photo Unknown 1 (photo of woman who resembles Jane Doe but is not Jane Doe performing oral sex on male)
- 7/25/22 – 6:15 UTC – Unknown 1 sends video
- 7/25/22 – 6:15 UTC – Unknown 1 sends another video
- 7/25/22 – 6:18 UTC – Unknown 1 sends another video

- 7/25/22 – 14:32 UTC – Unknown 1 sends another video
- 7/31/22 – 4:36 UTC – Unknown 1 sends another video
- 7/31/22 -4:36 UTC – Unknown 1 sends a photo of Jane Doe (face and breast displayed)
- 7/31/22 – 4:50 UTC – Unknown 2 sends Unknown 1 a screenshot of Jane Doe's Facebook profile.
- 7/31/22 – 4:56 UTC- Unknown 1 sends photo of Jane Doe completely nude (face, breast, genitals)
- 7/31/22 – 4:59 UTC – Unknown 1 sends photo of Jane Doe (Face and genitals exposed)
- 7/31/22 – 5:00 UTC – Unknown 1 sends video
- 7/31/22 – 5:04 UTC – Unknown 1 sends video
- 7/31/22 – 5:05 UTC – Unknown 1 sends photo of Jane Doe completely nude with full name "Jane Doe" imposed on the photo with smile emoji and hand emoji pointing to naked body
- 7/31/22 – 5:06 UTC – Unknown 1 sends photo of Jane Doe (Jane Doe in Bra holding sexual device)
- 7/31/22 – 5:07 UTC – Unknown 2 sends Unknown 1 video. (Process of ejaculating onto photo of Jane Doe)
- 7/31/22 – 5:19 UTC – Unknown 2 sends photo to Unknown 1 (photo of woman who resembles Jane Doe but is not Jane Doe performing oral sex on male)
- 7/31/22 – 5:28 UTC – Unknown 1 sends Unknown 2 photo of three people involved in group sex. Woman resembles Jane Doe but is not Jane Doe.
- 7/31/22- 5:28 UTC – Unknown 1 sends photo of Jane Doe bent over showing genitals
- 7/31/22 – 5:28 UTC – Unknown 1 sends photo of Jane Doe (clothed)
- 7/31/22- 5:29 UTC – Unknown 1 sends video
- 7/31/22 – 5:40 UTC- Unknown 1 sends video
- 7/31/22 -5:41 UTC – Unknown 1 sends video
- 7/31/22- 5:41 UTC – Unknown 1 sends photo of Jane Doe (face and lower body exposed)
- 7/31/22-5:42 UTC- Unknown 1 sends photo of Jane Doe (buttocks exposed wearing see through underwear)
- 7/31/22- 5:43 UTC- Unknown 1 sends photo of Jane Doe in a bra with sex device
- 7/31/22- 14:08 UTC – Unknown 1 sends photo to Unknown 2 – Jane Doe in bathing suit
- 7/31/22 – 14:11 UTC – Unknown 1 sends photo to Unknown 2 – Jane Doe in lingerie (no underwear) full body photo
- 8/1/22 – 4:32 UTC – Unknown 1 sends photo (Jane Doe in Bra)
- 8/1/22- 4:34 UTC- Unknown 1 sends photo (Jane Doe Face and Breast)
- 8/1/22 – 4:36 UTC- Unknown 1 sends photo (woman involved in group sex with 2 men) not Jane Doe but resembles Jane Doe

- 8/1/22- 4:41 UTC- Unknown 1 sends photo (woman involved in group sex with two men) not Jane Doe but resembles Jane Doe
- 8/1/22- 4:48 UTC- Unknown 1 sends video
- 8/1/22-5:05 UTC- Unknown 1 sends video
- 8/1/22-5:07 UTC- Unknown 1 sends photo of Jane Does genitals 8/1/22-5:18 UTC- Unknown 1 sends video
- 8/3/22-7:54 UTC- Unknown 1 sends photo of Jane Doe completely nude (full body)
- 8/3/22-7:55 UTC- Unknown 1 sends another photo of Jane Doe completely nude (full body)
- 8/3/22-21:56 UTC- Unknown 1 sends photo to Unknown 2 (shows photo of Jane Doe completely nude)
- 8/3/22-22:20 UTC- Unknown 1 sends video
- 8/3/22-27:47 UTC- Unknown 1 sends video
- 8/3/22-22:37 UTC- Unknown 2 sends photo (ejaculated onto photo of Jane Doe in bra holding sex device)
- 8/5/22-7:10 UTC- Unknown 2 sends link to sub-reddit where he posted the photos
- 8/5/22-7:15 UTC- Unknown 1 sends photo of the Reddit Post
- 8/5/22-7:16 UTC- Unknown 2 sends photo of reddit post (7 photos attached) 8/5/22-7:16 UTC- Unknown 2 sends reddit link again
- 8/5/22-7:2 3 UTC- Unknown 2 sends reddit link
- 8/5/22-7:38 UTC- Unknown 2 sends photo of Jane Doe (face and breast exposed)
- 8/5/22-16:17 UTC- Unknown 2 sends Jane Doe the link to reddit post containing nude photos.
- 8/3/22-19:57 UTC- Unknown 1 sends video
- 11/21/22-13:48 UTC- Fake Profile sends video
- 11/21/22-14:00- Unknown 3 sends photo of message thread containing sent and unsent messages with Fake Profile
- 11/21/22-7:14 UTC- Fake Profile sends photo of Jane Doe in bra and see through underwear
- 11/23/22-6:11 UTC- Fake Profile sends photo (Jane Doe's Breast exposed)
- 11/23/22-6:14 UTC- Fake Profile sends photo (Jane Doe's genitals)
- 11/23/22-6:20 UTC- Fake Profile sends photo (Jane Doe's face and lower body exposed)
- 11/23/22-6:29 UTC- Unknown 3 sends photo of message thread showing a picture of Jane Doe's genitals
- 11/23/22-7:22 UTC- Fake Profile sends photo of Jane Doe completely nude
- 11/23/22-7:27 UTC- Fake Profile sends photo of Jane Doe (face and genitals exposed with full name *Jane Doe * imposed on the photo)
- 11/23/22-7:33 UTC- Unknown 3 sends video

Jane Doe, Individually and on behalf of all others similarly situated, v. Cloudflare, Inc., et al,
Case No. _____
CLASS ACTION COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

- 11/23/22- 21:57 UTC- Fake Profile sends photo of Jane Doe in bra holding sex device
- 11/24/22-13:07 UTC- Fake Profile sends photo of woman resembling Jane Doe involved in group sex with 4 men
- 11/24/22- 8:36 UTC- Fake Profile sent photo of woman resembling Jane Doe involved in group sex with 2 men
- 11/28/22-21:48 UTC- Fake Profile to Unknown 5 sent and unsent message Facebook Data File 3: Message thread between Fake Profile and Unknown 411/21/22-6:16 UTC- Fake Profile to Unknown 4 sent and unsent message Facebook
- 11/22/22- 14:23 UTC- Fake Profile sent and unsent 3 messages to Unknown 6 (himself)
- 11/10/22-4:36 UTC- Fake Profile sent and unsent messages (Reported Conversation section shows that it was the reddit link where intimate photos were posted)
- 12/1/22- 14:04 UTC- Fake Profile sent photo of Jane Doe with face and genitals exposed End of Facebook Search Warrant Perimeter
- 1/19/23 – Video Posted to Fake Profile timeline

57.    Plaintiff's NCII was disclosed by Facebook Messenger.

58.    Defendant participated, and played an integral role, in the disclosure of Plaintiff's NCII based upon the services that it provides to Facebook.

59.    Jane Doe did not consent to the disclosure of her NCII by Facebook, Facebook Messenger or Cloudflare.

60.    On November 11, 2022, Jane Doe became aware that intimate visual depictions that she had created solely for her ex-fiancé were now available for people to see, and she promptly reported the violation to Facebook.

61.    Despite the report, Facebook failed to take any action to remove Plaintiff's NCII, and Facebook continued disclosing it.

62.    On November 16, 2022, Jane Doe filed a report with her local Sheriff's Office regarding the nonconsensual disclosure of her intimate images.

63.    As part of a law enforcement/criminal investigation, a search warrant was served on Meta on December 9, 2022, directing that her nonconsensual intimate images from July 1, 2022 – December 1, 2022, be removed.

64.    The search warrant application placed Meta on formal, judicial notice that the content hosted on its platform constituted evidence of a serious state crime regarding the nonconsensual disclosure of intimate images.

65.    Through the fake accounts, Facebook and Cloudflare continued disclosing Plaintiff's NCII through at least January 26, 2023.

66.    After receiving no response from Facebook in response to her initial report of fake Facebook accounts disclosing her NCII, Jane Doe twice more reported the fake Facebook accounts, which included her NCII.

67.    Almost a year later, on December 5, 2023, Facebook responded denying the request and stating that the profiles do not go against community standards.

68.    As such, the fake Facebook accounts which contain, and disclose, Plaintiff's NCII remain active.

69.    Facebook knew that Jane Doe did not consent to the disclosure of her intimate images on Facebook.

70.    Despite the knowledge that it is disclosing non-consensual intimate images, Meta has not implemented measures to prevent the disclosure of non-consensual intimate images.

71.    Despite the knowledge that it is disclosing non-consensual intimate images, Meta continues to do so without a meaningful system to verify the consent and age of depicted individuals.

72.     Facebook, and subsequently Meta, is, and was, willfully blind, and/or consciously avoided, and/or was deliberately indifferent, and/or reckless as to whether Jane Doe consented to Meta's disclosure of her intimate images on Meta.

73.     Meta acted in reckless disregard as to whether Jane Doe consented to the disclosure of her intimate images on Meta.

74.     Facebook, and subsequently Meta, disclosed Jane Doe's intimate images, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without Jane Doe's consent, knowing that Jane Doe did not consent to such disclosures or in reckless disregard whether she consented to such disclosures, in violation of the NCII statute and a violation of her intellectual property rights.

75.     As part of Meta's safety policies, it explicitly states that the website is committed to making its users feel safe by removing content that could contribute to a risk of harm. It further states that "content that threatens people has the potential to intimidate, exclude or silence others and isn't allowed on [their] technologies."

76.     In that same vein, in Meta's Policy Details from April 28, 2022, the Policy states that "once they become aware of apparent child exploitation, we report it to the National Center for Missing and Exploited Children, in compliance with applicable law. We know sometimes people share nude images of their own children with good intentions; however, we remove these images because of the potential for abuse by others and to help avoid the possibility of other people reusing or misappropriating the images."

77.     On September 29, 2022, Meta stated, "We remove real photographs and videos of nudity and sexual activity, AI-or computer-generated images of nudity and sexual activity, and digital imagery, regardless of whether it looks "photorealistic (as in, it looks like a real person).

As noted above, we also make careful allowances for real world art and certain medical, educational, and awareness-raising content, and these are detailed in the policy."

78.    Defendant has long boasted of its ability to identify nude images that are shared and disclosed on Facebook before anyone even reports it, and that it is committed to help people who have been the targets of cruel and destructive exploitation like "revenge porn."

79.    While Meta claims to have the programing in place through machine learning and artificial intelligence to proactively detect near-nude images and videos shared without consent, the NCII of Jane Doe was not removed by these "proactive systems."

80.    The continued existence of Plaintiff's NCII on fake Facebook accounts, after receiving multiple direct reports from the Plaintiff and even a search warrant in a criminal investigation regarding NCII, constituted a direct failure to enforce Meta's own self-imposed policies against NCII.

81.    The NCII of Jane Doe completely falls in line with Meta's criteria for removal under its Adult Sexual Exploitation policy.

82.    By proxy, through the use of Cloudflare, Cloudflare has also acted to disseminate the Plaintiff's and class members' NCII even though these images not only violate their policies but also that of Meta.

83.    Upon information and belief, Cloudflare (and some of the Doe Corporate Defendants) provides services to Internet users and/or companies that make NCII on Facebook accessible to viewers.

84.    Upon information and belief, Cloudflare (and some of the Doe Corporate Defendants) made NCII disclosures with a reckless disregard for whether Plaintiff and putative class members consented to said disclosures.

85.    Upon information and belief some of Doe Corporate Defendants disclosed the Plaintiff's and putative class members' NCII via their systems and/or platforms.

86.    Upon information and belief, some of the Doe Corporate Defendants disclosed the Plaintiff's and putative class members' NCII in interstate commerce.

## CLASS REPRESENTATION ALLEGATIONS

87.    This is a Class Action claim against the Defendants brought by Plaintiff on behalf of herself individually and the following Class of persons:

> **All persons whose intimate visual depiction and/or sexually explicit conduct, as defined in the NCII Statute, was disclosed, as defined in the NCII Statute, by Defendants without consent, where such disclosure was made by Defendants with knowledge that there was no consent or with a reckless disregard as to whether there was a lack of consent to such disclosure, from October 1, 2022 to the present.**

88.    Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition.

89.    Plaintiff sues on her own behalf and on behalf of the Class pursuant to Federal Rule of Civil Procedure 23.

90.    Each proposed member of the Class was the victim of NCII.

91.    ***Class Exclusions:*** The following people are excluded from the Class: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant of its parents have a controlling interest and its current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Class; 4) the legal representatives, successors, or assigns of any such excluded persons; 5) Plaintiff's counsel and Defendant's counsel.

92.    **Numerosity:** Plaintiff does not know the exact size of the Class or the identity of Proposed Class members, since said information is in the exclusive control of and readily accessible to the Defendants. However, upon information and belief, based upon the number of Meta (formerly Facebook) MAUs and DBUs, the amount of nudity reported to be contained on Meta (formerly Facebook), the amount of non-consensual nudity that is being removed,  and the fact that federal laws are being enacted to prevent and punish NCII disclosures, it is highly probable that the proposed Class is so numerous that joinder of members is impractical.

93.    **Commonality:** All members of the Class have been subjected to and affected by the Defendants' non-consensual disclosure of intimate images.  There are common questions of law and fact that are applicable to the claims of all Class members who have had intimate images disclosed by the Defendants without consent in violation of the NCII statute.  Plaintiff's and Class members' claims raise predominantly factual and legal questions that can be answered for all Class members through a single Class-wide proceeding. Questions of law and fact arising out of Defendant's conduct are common to all members of the Class, and such common issues of law and fact predominate over any questions affecting only individual members of the Class. For example, to resolve the claims, it will be necessary to answer the following questions, each of which can be answered through common, generalized evidence:

    a.   Whether Cloudflare's conduct violated the NCII Statute with respect to the proposed Class?

    b.   Whether Cloudflare knew that Class members did not consent, or recklessly disregarded whether Class members had not consented, to the disclosure of their NCII?

c.   Whether Cloudflare can be held liable for disclosing Class members NCII which was initially posted to the platform by a third party?

d.   Whether Cloudflare can be held liable for disclosing Class members NCII which was disclosed to Cloudflare by Meta?

e.   Whether the Court can enter declaratory and injunctive relief?

f.   What is the proper measure of liquidated damages under the NCII Statute for each Class member?

g.   Whether and in what amount the Class is entitled to recover attorneys' fees and costs?

94.   ***Typicality:*** Plaintiff's individual claims are typical of the claims that would be asserted by other members of the Class in that the Plaintiff and other members of the Class were subject to the same uniform practice by the Defendant of disclosing intimate images without consent, or with a reckless disregard as to the lack of consent, and in violation of the NCII statute. The Plaintiff and other Class members seek identical remedies under identical legal theories, were damaged by the same conduct of Defendant as complained of herein, and there is no material factual variation between Plaintiff's claims and those of the Class.  Plaintiff's claims are typical of those of all members of the Class, and in proving her claims, Plaintiff will simultaneously prove the claims of all Class members.  There is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

95.   ***Adequacy:*** Plaintiff will fairly and adequately protect the interests of the Class she represents because it is in her best interests to prosecute the claims alleged to obtain full redress due to her for the illegal conduct of which she complains. Her interests do not conflict with the interests of the Class because one or more questions of law and/or fact regarding liability are

common to all class members and by prevailing on her own claims, Plaintiff necessarily will establish liability to other class members. Plaintiff will fairly and adequately represent the interests of the Class and has no interests that are antagonistic to the interests of Class members. Plaintiff has retained counsel experienced in class action litigation and complex civil litigation to prosecute this action on behalf of the Class.

96.     Plaintiff satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Federal Rule of Civil Procedure 23(a).

97.     In addition to satisfying Rule 23(a), a class action is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to her claims and the claims of each member of the Class predominate over any question of law or fact affecting only individual members of the Class.  Additionally, the prosecution of separate claims, by or against individual members of the Class, would create a risk which would, as a practical matter, be dispositive of the interests of other member of the Class who are not parties to the adjudication, or would substantially impair or impede the ability of other members of the Class who are not parties to the adjudication to protect their interests.  Class Representation  is therefore clearly the superior procedural vehicle for the fair, consistent and efficient adjudication of the claims asserted herein, given that common questions of law and fact predominate over any individual questions that may arise, and significant economies of time, effort, and expense will inure to the benefit of the court and the parties in litigating the common issues on a Class-wide basis instead of a repetitive individual basis; many Class members' individual damage claims are too small to make individual litigation an economically viable alternative, and few Class members have an interest in individually controlling the prosecution of a separate action; despite the relatively small size of many individual Class members' claims, their aggregate volume, coupled with the economies of

Jane Doe, Individually and on behalf of all others similarly situated, v. Cloudflare, Inc., *et al*,
Case No. _____
CLASS ACTION COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation; given the size of individual Class members' claims, few Class members could afford to seek legal redress individually for the wrongs Defendant committed against them; when the liability of the Defendant is adjudicated, claims of all members of the Classes can be determined by the Court; this action will facilitate the orderly and expeditions administration of the Classes' claims, economies of time, effort and expense will be fostered and uniformity of outcome will be ensured without a class action, the Class members will continue to suffer damages and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the proceeds of its wrongful conduct; and no unusual difficulties are likely to be encountered in the management of this class action. California jurisdiction exists for Defendant, and venue in the Northern District and specifically the San Francisco Division is appropriate because Defendant maintains its principal address at all relevant times in San Francisco County.   The proposed class will include Californians, including residents of this District.   Class certification under Rule 23(b)(2) is also appropriate because Defendants acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.   In the absence of appropriate injunctive and/or declaratory relief, Defendants will continue to violate the NCII Statute by disclosing intimate images without the respective individual's consent.   The prerequisites for Class wide injunctive relief exist, and if injunctive relief is not granted, great harm and irreparable injury to Plaintiff and Class members will continue.

**FIRST CAUSE OF ACTION**

**Multiple Violations of 15 U.S.C. § 6851**

98.     Plaintiff Jane Doe, on behalf of herself and the proposed Class, adopts, re-alleges, and reaffirms the allegations in ¶¶ 1–97 as if each were fully set out herein, and further alleges as follows:

99.     Plaintiff, and the Class Members were, and are, depicted individual whose intimate visual depictions and/or sexually explicit conduct was disclosed, as defined in the NCII Statute, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, via Cloudflare through Meta.

100.     Plaintiff and the Class Members did not consent to Defendant's disclosures.

101.     In disclosing the Plaintiff's and Class Members' intimate visual depictions, Cloudflare knew that Plaintiff did not consent to such disclosures or recklessly disregarded whether Plaintiff consented to such disclosures.

102.     As a consequence, Plaintiff and Class Members are entitled to recover liquidated damages in the amount of $150,000 for each and every disclosure to anyone of a nonconsensual intimate image of her by Defendant from October 1, 2022, to the present, as set forth in § 6851(b)(3)(A)(i).

103.     In addition, Plaintiff and Class Members are entitled to recover the cost of the action, including attorney's fees and other litigation costs incurred; injunctive relief; and to maintain the confidentiality of Plaintiff using a pseudonym and all class members using pseudonyms.[3]

---

[3] See § 6851(b)(3)(B)

**WHEREFORE,** Plaintiff prays that this Honorable Court award damages pursuant to 15 U.S.C. § 6851(b)(3)(A)(i); award attorney's fees and costs pursuant to 15 U.S.C. § 6851(b)(3)(A)(i); permit Plaintiff, and class members if applicable, to proceed under pseudonyms pursuant to 15 U.S.C. § 6851(b)(3)(B); and such other relief as this Court deems just and proper. Further it is requested that the Court certify this action as a class action pursuant to Federal Rule of Civil Procedure 23; appoint the undersigned and law firm as Class counsel; and appoint Plaintiff Jane Doe as Class representative. and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members hereby demand a trial by jury.

Dated: November 30, 2025

ALTAIR LAW

/s/ **Craig M. Peters**

_____

By: CRAIG M. PETERS
Attorneys for Plaintiff

Jane Doe, Individually and on behalf of all others similarly situated, v. Cloudflare, Inc., *et al*,
Case No. _____
CLASS ACTION COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

1
2
3
4                                                                                                      ⸌
5
6
7                                          **<u>VERIFICATION</u>**
8
9        I declare under penalty of perjury that the foregoing Complaint is true and correct.
10
11
12       DATED: 11/30/25                      Jane Doe
13                                           Jane Doe[4]
14
15
16
17
18
19
20
21
22
23
24
25
26     _____
       [4] A version of this verification page has also been executed by Jane Doe under her real name, is in possession of
27     counsel, and is available to the Court or to be filed under seal if the Court requires.
                                                        24
28
       Jane Doe, Individually and on behalf of all others similarly situated, v. Cloudflare, Inc., et al,