UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,

         Plaintiff,

    v.

CLOUDFLARE, INC.,

         Defendant.

Case No. 25-cv-10300-AGT

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 33

Plaintiff Jane Doe, on behalf of herself and others similarly situated, initiated this action against San Francisco–based internet services provider Cloudflare, Inc., alleging violations of the Violence Against Women Act Reauthorization Act of 2022 § 1309, 15 U.S.C. § 6851. Section 6851 protects individuals from the nonconsensual disclosure of intimate images ("NCII"). Cloudflare, asserting that Plaintiff's claim is barred by section 230 of the Communications Decency Act, 47 U.S. § 230, seeks to dismiss Plaintiff's complaint for failure to state a claim for which relief can be granted.

Plaintiff's complaint alleges facts sufficient for Cloudflare to establish immunity under section 230. The Court grants Cloudflare's motion to dismiss.

## I.  BACKGROUND

The operative complaint alleges the following facts in support of Plaintiff's claim. The Court accepts these allegations as true at the pleading stage. *Retail Prop. Tr. v. United Blvd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

Cloudflare is an internet service provider that provides customers with network and security features that facilitate "safer, faster, more secure, and more reliable" operation of their websites. Dkt. 32, First Am. Compl. ("FAC") ¶¶ 14–16. Cloudflare performs multiple functions, including caching content to increase website performance, mitigating cyberattacks by distinguishing legitimate and illegitimate traffic, and finding the appropriate IP address for users to connect to their desired website. *Id.* ¶¶ 16–17. Cloudflare plays an integral role in users' access to websites such as Facebook. *Id.* ¶¶ 18–19, 21.

Facebook, owned by Meta Platforms, Inc., is a social networking platform where users can "post text, images, videos, and share direct messages." *Id.* ¶ 22. Meta claims to restrict NCII and other forms of adult nudity and sexual content on Facebook, but still, NCII is posted to Facebook. *Id.* ¶¶ 30–31. Because of Cloudflare's role in providing content delivery services for Facebook, Cloudflare plays a role in users' access to these illicit posts. *Id.* ¶ 32.

In its public statistics, Facebook reported acting on more than 550 million pieces of adult nudity and sexual content and more than 210 million pieces of child nudity, physical abuse, and sexual exploitation content over the last four years. *Id.* ¶¶ 33, 36–37. Meta knows that Facebook has been and is used for "revenge porn" and states that its policy is to remove NCII. *Id.* ¶ 40. Plaintiff alleges that because Cloudflare provides services to Meta and Facebook, it should be aware of these statistics. *Id.* ¶¶ 38, 41. Furthermore, public advocacy groups have named both Meta and Cloudflare as entities that "facilitate[], enable[], and profit[] from sexual abuse and exploitation." *Id.* ¶ 64; *see also id.* ¶¶ 65–68.

Meta has created technology and artificial intelligence to flag and address the significant problem of NCII on Facebook. *Id.* ¶ 42. However, neither Meta nor Cloudflare has a

mechanism in place by which it can verify the age of the individual depicted and whether they have consented to the disclosure of the content. *Id.* ¶¶ 43, 63.

Cloudflare has its own reporting system where users can report abuse on websites Cloudflare services. *Id.* ¶¶ 51–53. Cloudflare cannot directly remove NCII, so it forwards these reports to the hosts of the websites it services. *Id.* ¶ 54.

Plaintiff created "intimate visual depictions," as defined by section 6851, to share solely with her then fiancé. *Id.* ¶ 71. Plaintiff did not consent to sharing these images with anyone other than her fiancé. *Id.* ¶ 73. Plaintiff and her fiancé then split up, at which point Plaintiff's now ex-fiancé created multiple fake Facebook profiles impersonating Plaintiff, through which he shared her intimate images without her consent to both her acquaintances and strangers. *Id.* ¶¶ 74–77. Plaintiff alleges that Cloudflare played an "integral role" in the disclosure of her NCII because of the services Cloudflare provides in facilitating user access to Facebook. *Id.* ¶ 79.

Plaintiff became aware of these nonconsensual disclosures on November 11, 2022, and immediately reported them to Facebook; but Facebook failed to act on the report and continued disclosing the NCII. *Id.* ¶¶ 85–86. Plaintiff then filed a report with her local sheriff's office, who served a search warrant on Meta on December 9, 2022, instructing Meta to remove the NCII. *Id.* ¶¶ 87–88. However, the images were still accessible through Facebook via Cloudflare until at least January 26, 2023. *Id.* ¶ 90. Plaintiff alleges that Cloudflare knew or recklessly disregarded that it was distributing her and other proposed class members' NCII through its servers. *Id.* ¶ 109.

Plaintiff filed her original class action complaint against Cloudflare in November 2025, asserting a claim for multiple violations of section 6851. Dkt. 1. She then filed her

FAC on April 13, 2026, alleging additional factual allegations. Dkt. 32. Cloudflare now moves to dismiss the FAC. Dkt. 33.

## II.  LEGAL STANDARD

Cloudflare seeks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating the FAC, the Court must "accept factual allegations . . . as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When raising an affirmative defense in a Rule 12(b)(6) motion, the defendant generally bears the burden of pleading and proving the defense. *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The plaintiff is not required to plead the "subject of an anticipated affirmative defense," *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (quoting another source), so dismissal under Rule 12(b)(6) is proper only where "the 'allegations in the complaint suffice to establish' the defense," *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

### III. DISCUSSION

Cloudflare moves to dismiss Plaintiff's claim on two grounds: (1) that Cloudflare is shielded from liability by section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1), and (2) that Plaintiff has failed to allege that Cloudflare knew or was reckless about the disclosure of Plaintiff's NCII, in violation of 15 U.S.C. § 6851. The Court considers section 230 below. Because section 230 immunity applies, the Court will not address whether Plaintiff has stated a claim under § 6851.

**A.      Section 230 Immunity**

Courts in the Ninth Circuit routinely consider the applicability of section 230 during motions to dismiss. *See, e.g.*, *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159, 1166–67 (9th Cir. 2026); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009). The defendant bears the burden of establishing its immunity. *Calise*, 103 F.4th at 738 n.1. "Immunity applies when three criteria are met: the provider is an interactive computer service, the plaintiff is treating the entity as the publisher or speaker, and the information is provided by another information content provider." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023).

Plaintiff doesn't dispute that Cloudflare is a "provider . . . of an interactive computer service," dkt. 35 at 6–7, and the Court agrees given the "expansive" definition of the term. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Nor does Plaintiff dispute that her NCII was "initially posted to [Facebook] by a third party." FAC ¶ 118(c).

Plaintiff nevertheless argues that Cloudflare is not eligible for section 230 immunity for three reasons: (1) Plaintiff's claim does not treat Cloudflare as a "publisher or speaker of third-party content" as required by § 230(c)(1); (2) Cloudflare is an "information content

provider," which precludes it from immunity under section 230; and (3) Plaintiff's claim directly involves intellectual property rights as stated under § 230(e)(2) and is thus exempt from immunity under section 230. Dkt. 35 at 10, 15–17. The Court considers these arguments in turn.

### 1. Plaintiff's claim requires the Court to treat Cloudflare as a "publisher or speaker" of third-party content.

Under section 230, the Court must examine whether "the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another," and "[i]f it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1102. The Ninth Circuit has noted that generally, "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.* However, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008).

Plaintiff argues that her claim does not allege that Cloudflare "reviewed, edited, [or] decided to publish or withdraw from publication" the content at issue, particularly because Cloudflare "does not have the ability to remove content hosted by others." Dkt. 35 at 12. However, the Ninth Circuit recently emphasized that if an interactive computer service provider is "disseminating content created by others, it is functioning as a publisher and is immune from liability related to that content" under section 230. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 640 (9th Cir. 2025).

Here, Plaintiff alleges that Cloudflare is doing exactly that: via its services, "Cloudflare . . . acted to disseminate" and thereby allowed individuals to access Plaintiff's NCII. FAC ¶ 107. This dissemination of content is a clear function of a publisher as required for

immunity under section 230. *Doe 1*, 148 F.4th at 640.

### 2.    Cloudflare is not an "information content provider" in this context.

Plaintiff argues that Cloudflare's acknowledgement of its status as an "access software provider" under § 230(f)(4)(C) makes it an "information content provider," which excludes it from section 230 protections. Dkt. 35 at 15. The Court is not persuaded by Plaintiff's argument.

Section 230 immunity does not apply to interactive computer service providers that are also information content providers. *Roommates.com*, 521 F.3d at 1166. An interactive computer service provider is defined as "any information service, system, or *access software provider* that provides or enables computer access by multiple users to a computer server." § 230(f)(2) (emphasis added). An "information content provider" is someone who is responsible "in whole or in part" for the "creation or development of information provided through the internet." § 203(f)(3). For an entity to be considered an information content provider, it needs to do more than "provide[] neutral tools" that leave the user fully in control of the content they are posting and instead "enhance" the harm of the unlawful content, "encourage" the creation of the unlawful content, or make the unlawful content "easier" to post. *Roommates.com*, 521 F.3d at 1172.

In *Roommates.com*, the Ninth Circuit found that a company that required users to respond to questions that violated the Fair Housing Act was not eligible for section 230 immunity because it was at least "in part" responsible for the creation of the users' unlawful answers. 521 F.3d at 1166. In order to set up a profile to find roommates, users were required to answer questions indicating, for example, "whether they [were] willing to live with 'Straight or gay' males, only with 'Straight' males, only with 'Gay' males or with 'No

males.'" *Id.* at 1165. Roommates.com then displayed these answers on its users' profile pages. *Id.* Because Roommates.com's questions "materially contribut[ed] to [the answers'] unlawfulness," Roommates.com was considered an information content provider and thus ineligible for section 230 immunity. *Id.* at 1168.

In *Rigsby v. GoDaddy, Inc.*, on the other hand, the Ninth Circuit found GoDaddy immune from liability under section 230 for content posted on a website domain which Go-Daddy had registered to a user. 59 F.4th 998, 1003–04. Because GoDaddy offered "only a domain name and a platform" and did not "require" or "induce" the creation of the third-party content, it was not an internet content provider under section 230. *Id.* at 1008–09.

Here, as Cloudflare notes, unlike the direct involvement from Roommates.com in soliciting unlawful responses from its users, "nothing in the Amended Complaint alleges Cloudflare created, developed, required, encouraged, or selected the ex-fiancé's content or its alleged nonconsensual nature." Dkt. 36 at 8. Not only did Cloudflare not encourage the development of the content, but it had no ability to directly remove it from Facebook. FAC ¶ 54. Instead, like GoDaddy, Cloudflare merely provided access to content created by a third party, which is activity protected under section 230. *Id.* ¶ 18; *Rigsby*, 59 F.4th at 1009.

### 3.    Plaintiff's claim does not directly involve established intellectual property rights.

Section 230(e)(2) provides an exception to section 230 immunity if the immunity "limit[s] or expand[s] any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). Plaintiff argues that because the NCII content is her intellectual property, section 230 immunity cannot apply. Dkt. 35 at 18. However, Plaintiff's claim arises from 15 U.S.C. § 6851, which does not directly pertain to intellectual property rights.

"[T]he intellectual property exception contained in § 230(e)(2) encompasses claims

pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark." *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019). The Ninth Circuit interprets the exception narrowly in order to preserve Congress's stated purpose for section 230, which "counsels against an expansive interpretation of the exception." *Id.*

The district court in *Doe v. X Corp* addressed the applicability of § 230(e)(2)'s intellectual property exception to claims brought under the same statute at issue here, 15 U.S.C. § 6851. *Doe v. X Corp.*, 821 F. Supp. 3d 632, 641 (N.D. Tex. 2026). The plaintiff argued that NCII content was his intellectual property, and therefore, the intellectual property exception applied. *Id.* The court rejected this argument, explaining that the "exception applies only when the claims arise from a law directly implicating intellectual property rights, not merely when intellectual property is involved in the claim." *Id.* "[T]he statute under which [the plaintiff] sue[d]—§ 6581—[was] not an intellectual property law." *Id.* It was "concerned with whether the depicted individual *consented* to a specific disclosure of an intimate visual depiction—regardless [of] who [held] the copyright to the image." *Id.* (internal quotation marks omitted).

In *Malwarebytes*, 946 F.3d 1040, the Ninth Circuit provided similar guidance on an analogous issue. Although the plaintiff brought a false advertising claim under the Lanham Act, a federal statute that "itself deals with intellectual property, *i.e.* trademarks," the court held that the false advertising claim did not trigger § 230(e)(2)'s intellectual property exception because it did not "relate to trademarks or any other type of intellectual property." *Id.* at 1045; *see also id.* at 1053–54.

The district court's analysis in *Doe v. X Corp.*, 821 F. Supp. 3d 632, is persuasive

and is consistent with the Ninth Circuit's reasoning in *Malwarebytes*, 946 F.3d 1040. Plaintiff may own copyrights to her intimate images, but her claim under  15 U.S.C. § 6851 isn't predicated on whether she owns such copyrights. "[Section] 6581 creates a privacy-based tort right of action, not an intellectual-property based one." *Doe*, 821 F. Supp. 3d at 641.

Section 230(e)(2)'s intellectual property exception does not apply in this case.

## IV. CONCLUSION

Plaintiff, in her FAC, alleges sufficient facts for Cloudflare to establish an affirmative defense under § 230(c)(1)'s immunity provision. Section 230(c)(1) bars Plaintiff's claim under 15 U.S.C. § 6851. The Court therefore grants Cloudflare's motion to dismiss.

Plaintiff requests leave to amend her complaint, dkt. 35 at 24, but hasn't explained how she could amend her complaint to avoid § 230(c)(1) immunity. The Court isn't yet prepared to hold that an amendment would be futile but also isn't yet convinced that leave to amend is warranted. The Court, then, will require Plaintiff to file a motion for leave to amend if she intends to pursue her claim further. On or before July 9, 2026, she may file a motion for leave to amend. With her motion, she must include a proposed amended complaint and articulate why the amendment wouldn't be futile. If Plaintiff doesn't move for leave to amend by July 9, 2026, the Court will dismiss her complaint with prejudice.

**IT IS SO ORDERED.**

Dated: June 23, 2026

Alex G. Tse
United States Magistrate Judge

10